UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
GLOBAL REFINING GROUP, INC.,                :

        Plaintiff,                                      :    Case No.: 1:21-cv-532

  -against-                                              :    **COMPLAINT**

PMD ANAYLYSIS INC. a/k/a ANALYSE        :    **JURY TRIAL DEMANDED**
PMD INC., ROBERT TURCOTTE, and
MONICA ARMSTRONG,                            :

        Defendants.                                   :
                                                                 :
------------------------------------- X

## INTRODUCTION

1. Plaintiff Global Refining Group, Inc. ("Plaintiff" or "Global") is a leading catalytic converter recycling and processing corporation. Plaintiff owns valuable trade secrets in its proprietary database of laboratory metallurgical assay compositional analysis and pricing information for tens of thousands of catalytic converters ("Cats") and owns the copyrights in more than thousands of photographs of those Cats. Plaintiff licenses select customers the right to access the "Global Mobile" App, which contains its proprietary, photo-sorted, trade secret database of assay and pricing information about those Cats.

2. Defendant PMD Analysis Inc. is a competing, recently formed Canadian federal corporation owned and operated by Defendants Robert Turcotte and Monica Armstrong. For several years, Robert Turcotte has owned, advertised and operated competing Cat recycling businesses, including those named "Premium Catalytic Converter Refining" and "R&R Recycled Cats."

3. Unbeknownst to Plaintiff until recently, Defendants ("Defendants") unlawfully copied and republished thousands of copyrighted photographs, and misappropriated trade secret

information from the Global Mobile App. Defendants continue to sell, use, republish, distribute, and employ Plaintiff's trade secrets and copyrighted works on their website, located at www.converterdatabase.ca. Plaintiff seeks to recover damages arising from misappropriation of trade secrets, the infringement of its copyrights by Defendants, unfair competition, and breach of contract. Plaintiff also seeks permanent injunctive relief barring Defendants from further misappropriation or infringement of Global's copyrights or proprietary database.

## THE PARTIES

4. Plaintiff Global Refining Group, Inc. is a Virginia Corporation with a principal place of business at 618 Main Street, Kenbridge, Virginia 23944. "Global Refining Group" is a team of partners in the United States, including in the State of New York, and Canada that serves North America and the globe with catalytic converter recycling. One of Plaintiff's partner companies, Alpha Recycling, Inc., is located in Bronx, New York—which entity and location is also identified and listed on the very same website that Defendants unlawfully accessed the stolen database and photographs: www.globalrefininggroup.com/our-partners.

5. Upon information and belief, PMD Analysis Inc. a/k/a Analyse PMD Inc. ("PMD") is a Canadian federal corporation with a registered office address of 188 Rue Trudel, Gatineau QC, J8L 3L2, Canada (the "Rue Tudel Address") and principal place of business at 64 Henri-Chartrand Unité 4, Gatineau, Quebec J8L 0W9 (the "Henri-Chartrand Office"). Defendants Robert Turcotte and Monica Armstrong are the listed directors of PMD.

6. Upon information and belief, Robert Turcotte ("Turcotte") is a Canadian individual residing at the Rue Tudel Address and operates as sole proprietor under the trade name "Premium Catalytic Converter Refining."

7.      Upon information and belief, Monica Armstrong ("Armstrong") is a Canadian individual residing at the Rue Tudel Address, who materially participated in the actions and conduct alleged herein.

8.      Defendants run, own and/or operate the website, located at www.converterdatabase.ca (the "Infringing Website"). While Turcotte has advertised the Infringing Website on his personal Facebook and social media accounts since, upon information and belief, as early as 2019, PMD's logo and business name was listed on Infringing Website on or around late November 2020.

## JURISDICTION AND VENUE

9.      This action includes claims of misappropriation of trade secrets pursuant to the Defend Trade Secrets Act of 2016 ("DTSA"), and copyright infringement pursuant to the Copyright Act. This Court has subject matter jurisdiction over this action under 18 U.S.C. § 1836 and 28 U.S.C. § 1338.

10.     This Court has pendent jurisdiction of the related state law claims asserted in this action pursuant to 28 U.S.C. § 1367 because they involve the same parties, they arise from the same operative facts common to the causes of action arising under the federal claims, and because the exercise of pendent jurisdiction serves the interests of judicial economy, convenience, and fairness to the parties.

11.     This Court has personal jurisdiction over Defendants under Fed. R. Civ. P. 4 and N.Y. C.P.L.R. § 302, at least, because Defendants committed tortious acts without the state causing injury to person or property within the state of New York. Due to Defendants' misappropriation and infringing acts, Plaintiff and Plaintiff's New York affiliates, have suffered irreparable injury.

12. PMD, under the ownership, direction and control of Turcotte and Armstrong, extensively does business in this judicial district, and more particularly, engages in the marketing and sales of access to their competing platform on their Infringing Website to customers in this judicial district.

13. Additionally, this Court has personal jurisdiction over Defendants because Defendants expressly and voluntarily agreed to submit to the jurisdiction of this Court in an operative agreement between the parties concerning access to Plaintiff's platform, which names New York as the exclusive venue for "any disputes arising out of or relating to [that] Agreement." *See* Exhibit A.

14. Venue is proper in this Court because Defendants agreed to submit to New York as the exclusive venue for any disputes related to the Global Mobile App, and additionally, because Defendants, upon information and belief, are not residents of the United States. According to 28 U.S.C. § 1391, Defendants may be sued in any judicial district, including New York.

**FACTUAL BACKGROUND**

15. Plaintiff Global Refining Group, Inc. is a leader in the field of recycling Cats and scrap metal, and is highly recognized in the local, national and global market. Plaintiff is one of the leading businesses in the industry, and is committed to giving its customers the best price for their Cats and scrap metals.

16. Cats are exhaust emission control devices that are commonly found in automobiles.

17. Each Cat contains certain amounts of platinum (Pt), palladium (Pd), and rhodium (Rh). Because these platinum-group metals ("PGM"), or precious metals, are valuable, businesses recycle Cats to recover PGMs.

18. A Cat's value and recycling price depend on its ratio of PGM.

19. Different models of Cats have different ratios of PGM.

20. To learn how much PGM a Cat contains, a Cat has to go through a special testing process, or assays, which generally costs tens of thousands of dollars each. There is no way to tell the true value of a Cat by visible inspection. Only with assay, or testing, can one know how much precious metal is inside.

21. Because it is expensive to test thousands of different Cats for PGM, most recycling companies lack the resources to do so. Indeed, Global is not aware of another competitor who has tested the entire universe of Cats and collected the information in a database, complete with photographs.

22. Because a Cat's value is strongly correlated to its assay results, having a database of all Cats' PGM levels is extremely valuable to Global, and provides a competitive advantage.

23. Plaintiff, as a leader of the Cat recycling industry, has accumulated an incredible number of assays from different models of Cats. Plaintiff spent over 5 years and millions of dollars in resources developing this database.

24. Plaintiff has also developed an efficient processing system which provides more accurate assay results than those used by competitors. As such, Plaintiff's test results also provide a competitive advantage over other assay results.

25. Plaintiff also travels extensively to conduct testing to accumulate more products to assay.

26. Because Plaintiff has access to so many assays and is able to provide more accurate assay results, Plaintiff offers its customers with an impressive and trustworthy value for the PGM in any Cat.

27. In return, the customers provide Plaintiff with more Cats to recycle, and Plaintiff is able to conduct more testing, and therefore collect more assay results and information.

28. Owning a large and unparalleled database of assay results for Cats is one of the Plaintiff's business advantages.

29. To better utilize this business advantage, Plaintiff launched a mobile app called Global Mobile (the "App" or "Converter App.") in 2015.

30. Plaintiff restricts public access to the App. Plaintiff grants certain large-volume, existing customers free access to the App, subject to Plaintiff's strict licensing terms.

31. The App allows users to access Plaintiff's database, which consists of thousands of up-to-date assays.

32. Plaintiff updates the App with a minimum of 250 new assays monthly.

33. A user can look up converters with a variety of search fields, such as make, model, serial number, and nickname. Each assay entry in the response will contain the assay's details including associated converters and links to photos.

34. A user can access the photo of a converter and its live market price. Every ten minutes, the database updates the live market price.

35. Plaintiff is also the owner of over 20,000 photographs of Cats ("Cat Photos"), which are also displayed the Global Mobile App's database—**roughly 8,079** of which have been copied by Defendants (the "Infringed Works") and republished on their Infringing Website. *See* Exhibit B.

36. As of the date of this Complaint, 452 of the Infringed Works are registered with the U.S. Copyright Office. *See* Exhibit C.

37. Plaintiff is in the process of applying to register the other roughly 7,500 other Infringed Works with the U.S. Copyright Office and will amend the complaint when the registrations are issued. *See* Exhibit D.

38. Plaintiff is the owner of the assay information ("Assay Information") in its database. Assay Information includes lists of Cats' makes, models, and nicknames, lists of daily metal prices corresponding to precise, past assay results, and price lists of Cats that vary according to geographic region and current market prices.

39. Plaintiff has taken extensive steps to maintain the confidentiality of the App and Assay Information. Plaintiff strictly limits public access to the App including the Assay Information. Access to the App requires special permission from Plaintiff, who then assigns a username log-in and password.

40. Plaintiff also takes reasonable measures to maintain the security of the systems where the App and Assay Information is maintained, including technical, administrative, and physical security measures to guard against unauthorized access, use and modification to systems where Plaintiff stores the electronic data comprising the Assay Information.

41. Plaintiff also requires its employees to maintain confidentiality of the Assay Information, including but not limited to assigning unique passwords for their access thereto.

42. Similarly, each of the Cat Photos within the App contain watermarks and unique "sample numbers" assigned by Plaintiff, containing the prefix "GRG."

43. To access the App, a user must agree to Global Mobile Software Terms and Conditions (the "Agreement"). *See* Exhibit A.

44. The Agreement provides that it "shall be governed exclusively by, and construed in accordance with the laws of the State of New York." The Agreement further mandates that the

appropriate federal or state court in New York county is the exclusive forum for any disputes arising out of or relating to this Agreement.

45. The Agreement prohibits any user to use the App or the Global Website in any way which is "unlawful, illegal, fraudulent, or harmful."

46. The Agreement prohibits any user from conducting any systematic or automated collection of data or information from the App.

47. The Agreement prohibits any user from republishing any data or information from the App (including republication on another website), or otherwise sharing Plaintiff's prices with competitors.

48. The Agreement prohibits any user from selling, renting, sub-licensing, or otherwise monetizing data or information from Global Mobile App.

49. The Agreement prohibits any user from reverse engineering, modifying, reproducing, duplicating, tampering with, redistributing, or copying Global Mobile, or any information or data contained therein, except as expressly permitted by the Agreement.

50. On or about August 17, 2020, Plaintiff became aware that Defendants were marketing, republishing, using, selling, and distributing, including without limitation, approximately 8,079 of the Cat Photos, i.e. the Infringed Works, and corresponding Assay Information, on the website located at [www.Converterdatabase.ca](www.Converterdatabase.ca) (the "Converter Database Site" or the "Infringing Website").

51. Plaintiff has never authorized Defendants, by license or otherwise, to copy, publish, distribute, or sell any Cat Photos or Assay Information.

52. Upon information and belief, Defendants started running the Converter Database Site on or around to November 2018.

53. Defendants advertise their website as "your online catalytic converter pricing catalog." Defendants' website converterdatabase.ca allows users to search a catalytic converter's price (in U.S. dollars) by entering the converter's code, nickname, or manufacturer. Upon entering its search, the user will see a specific model's Cat Photo. Upon login, a user may see the Cat's current price in U.S. dollars, priced in accordance with corresponding assay results that were and are derived exclusively from Plaintiff's Assay Information, which is only accessible via Plaintiff's App.

54. Defendants also wiped out Plaintiff's watermark logo from the Cat Photos, and superimposed Defendants' website address onto the photos, while removing the GRG sample number and barcode:

**Defendant's photo on Infringing Website**          **Plaintiff's Cat Photo from App**





**Defendant's photo on Infringing Website**      **Plaintiff's Cat Photo from App**





55. According to Defendants' advertisements, Defendants sell access to their Infringing Website for $30 per month or $300 per year.

56. Defendants directly target Plaintiff's client base. On the PMD Facebook website, Defendants state: "Do you need a pricing guide but don't have enough catalytic converters to sell to big companies to get access to a pricing guide? We got you covered! FOR ONLY 30$ CDN you get access to over 8000 catalytic converters with UNLIMITED searches! Our prices on our online pricing catalog are in US dollars and updated with the stock market daily. TRY IT

NOW!!!" Defendants directly target mid to small size Cat sellers who are not big enough to obtain special access to Plaintiff's App.

57. Defendant Turcotte also advertises the Converter Database Site on his personal Facebook page, inclusive of pictures of the Infringed Works.

58. Defendants continue to republish, distribute, use, and/or sell access to Cat Photos and Assay Information on the Converter Database Site. Defendants continue to use their Facebook, Twitter, and LinkedIn accounts to market their competing business.

59. As a result of Defendants' actions, Plaintiff has suffered irreparable injury through the unauthorized copying, use, publication, distribution, and sale of access to the Cat Photos and Assay Information.

60. On January 4, 2021, Plaintiff sent Defendants a cease and desist letter, directing them to cease all use of the Infringed Works and misappropriation of the Assay Information on the Infringing Website.

**FIRST CAUSE OF ACTION**
**(MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF DEFEND TRADE SECRETS ACT)**

61. Plaintiff reasserts paragraphs 1 to 60.

62. Plaintiff is the owner of Assay Information, correlated with lists of Cats' makes, models, and nicknames, lists of daily metal prices, and lists of Cats' current market prices.

63. Plaintiff's database of proprietary Assay Information constitutes a trade secret because it is a compilation of information, acquired at great cost and effort, that is used in the Plaintiff's Cat recycling business. The database provides Plaintiff with an advantage over its competitors, who do not know or use such information, or do not have access to such accurate information.

64. The Database is comprised of non-public information, not known outside of the App.

65. Each of Plaintiff's employees either has employment contracts, independent contractor agreements, and/or non-disclosure agreements which expressly limit disclosure of, *inter alia*, Assay Information as well as other trade secrets. Passwords that are used to access the App and Assay Information are also required to be kept confidential

66. Plaintiff has taken extensive steps to maintain the confidentiality of the trade secrets. Plaintiff strictly limits public access to the information. The access to the App requires log-in and password protection.

67. Plaintiff has spent considerable time and resources in developing Assay Information. Plaintiff has developed an efficient processing system to provide some of the most accurate assay results in the industry. Plaintiff travels extensively to conduct testing and collect assay results.

68. Assay Information is extremely valuable to Plaintiff and Plaintiff's competitors, including Defendants. Without Assay Information, a company faces significant financial risk in purchasing and selling Cats.

69. Because Plaintiff has invested million dollars over the past 5 years into creating the Database, Plaintiff is able to provide the most accurate prices to its customers, allowing them to not overpay for Cats.

70. In turn, these customers generate more business for Global.

71. Additionally, because customers want to gain access to Plaintiff's proprietary Assay Information database, customers are more likely to conduct business with Plaintiff.

72. The Database provides Plaintiff with an important business advantage.

73. It is extremely costly and impracticable, if not impossible, for other competitors, including Defendant, to properly acquire, generate, or duplicate Assay Information.

74. As a result of its efforts, Plaintiff has successfully compiled a huge database of Assay Information on over 20,000 Cats.

75. Defendants, in willful bad faith, misappropriated Plaintiff's confidential trade secret information, and built the Converter Database Site, on which they sell access to Plaintiff's trade secret Assay Information and price lists.

76. Beginning on an unknown date, but at least since November 2018 and continuing to the present, Defendants have sold, used, republished, and distributed Plaintiff's trade secret Assay Information on the Converter Database Site.

77. Defendants know that Plaintiff is the owner of the Assay Information, given Defendant Turcotte had been a customer of Plaintiff's for several years. Defendants have intentionally wiped out Plaintiff's watermark and barcodes from the photographs, replaced them with their own logo, and presented Plaintiff's photographs and Assay Information as Defendants' own.

78. The above acts constitute a theft of Plaintiff's carefully protected trade secrets. Those trade secrets are highly valuable –and give Plaintiff a competitive advantage in the multi-billion-dollar Cat recycling field.

79. Defendants recognize the competitive advantage that use of Plaintiff's assay results gave it – having established a website to sell such information.

80. The magnitude of the harm caused by Defendants' theft of Plaintiff's trade secrets is staggering.

81. Plaintiff and its business have been damaged in an amount to be determined at trial.

82. As a result of Defendants' misappropriation of the Assay Information, Defendants have also been unjustly enriched in the millions of dollars.

83. As a result of Defendant's conduct above, Defendants have violated the Defendant Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. §§ 1832(a) and 1836.

84. As a result of the misappropriation, Plaintiff has suffered irreparable harm, and Defendants should be preliminarily and permanently enjoined from directly or indirectly infringing Plaintiff's rights in the App and Assay Information.

85. As such, pursuant to 18 U.S.C. § 1836(b)(3), Plaintiff is entitled to all remedies available under the DTSA.

## SECOND CAUSE OF ACTION
### (COPYRIGHT INFRINGEMENT)

86. Plaintiff reasserts paragraphs 1 to 60.

87. Plaintiff's roughly 8,079 Infringed Works constitute original works, within the meaning of the U.S. Copyright Act.

88. At all relevant times, Plaintiff has been and still is the owner of all rights, title, and interest in Cat Photos, which have never been assigned, licensed, or otherwise transferred to Defendant or anyone else.

89. The U.S. Copyright Office has issued copyright registration regarding 452 of the Cat Photos, *see* Exhibit C.

90. Plaintiff will amend the complaint when Plaintiff receives the registration of all 8,079 Cat Photos.

91. Beginning on an unknown date, but at least since November 2018 and continuing to the present, Defendants, with knowledge of Plaintiff's copyrights, infringed on Plaintiff's exclusive rights to control and display the Cat Photos publicly. Defendants did so by, *inter alia*, using, publishing, and displaying Plaintiff's Cat Photos on Defendants' website without authorization.

92. Defendants' unlawful conduct, as set forth above, was willful, intentional, and in reckless disregard of Plaintiff's copyrights.

93. Defendants intentionally wiped out Plaintiff's logo background, and placed its own company website address onto the photos.

94. All of the foregoing acts of Defendants were and are without the authority of Plaintiff, the sole copyright owner of the Cat Photos. At no time has Plaintiff ever consented expressly or impliedly to the use of the Cat Photos by Defendants.

95. Defendants knew their acts constituted copyright infringement.

96. Defendants' conduct was willful within the meaning of the Copyright Act.

97. As a result of Defendants' willful and wrongful conduct, Defendants are liable to Plaintiff for copyright infringement pursuant to 17 U.S.C. § 501. Plaintiff has suffered, and will continue to suffer, substantial losses from the unauthorized use of its copyrighted works.

98. Plaintiff is entitled to recover damages, which include its losses and any and all profits Defendants have made as a result of its wrongful conduct. 17 U.S.C. § 504.

99. Alternatively, Plaintiff is entitled to statutory damages under 17 U.S.C. § 504(c). Because Defendants' infringement was willful, the awarded damages should be enhanced.

100. As a result of the infringement, Plaintiff has suffered irreparable harm, Defendants should be preliminarily and permanently enjoined from directly or indirectly infringing Plaintiff's rights.

## THIRD CAUSE OF ACTION
## (MISAPPROPRIATION OF TRADE SECRETS UNDER COMMON LAW)

101. Plaintiff reasserts paragraphs 1 to 60.

102. Plaintiff is the owner of Assay Information, which includes lists of Cats' makes, models, and nicknames, lists of daily metal prices, and lists of Cats' current market prices.

103. Plaintiff's database of proprietary Assay Information constitutes a trade secret because it is a compilation of information, acquired at great cost and effort, that is used in the Plaintiff's Cat recycling business. The database provides Plaintiff with an advantage over its competitors, who do not know or use such information, or do not have access to such accurate information.

104. Assay Information is extremely valuable to Plaintiff and Plaintiff's competitors, including Defendants. Without Assay Information, a company faces significant financial risk in purchasing and selling Cats.

105. The database provides Plaintiff with an important business advantage.

106. It is extremely costly and impracticable, if not impossible, for other competitors, including Defendant, to properly acquire, generate, or duplicate Assay Information.

107. Defendants, in willful bad faith, misappropriated Plaintiff's confidential trade secret information, and built a website, on which they sell access to Plaintiff's trade secrets.

108. Beginning on an unknown date, but at least since November 2018 and continuing to the present, Defendants have sold, used, republished, and distributed Plaintiff's trade secret Assay Information on its website.

109. As such, Defendant is liable to Plaintiff for common law misappropriation of trade secrets.

110. Plaintiff and its business has been damaged in an amount to be determined at trial.

111. As a result of Defendants' misappropriation of the Assay Information, Defendants have also been unjustly enriched in the millions of dollars.

112. As a result of the misappropriation, Plaintiff has suffered irreparable harm, and Defendants should be preliminarily and permanently enjoined from directly or indirectly infringing Plaintiff's rights in the App and Assay Information.

## FOURTH CAUSE OF ACTION
### (UNFAIR COMPETITION and FALSE PROMOTION UNDER 15 U.S.C. § 1125(a)(1)(B))

113. Plaintiff reasserts paragraphs 1 to 60.

114. Defendants willfully misappropriated Assay Information and Cat Photos from Plaintiff and are profiting from the stolen trade secrets and infringed copyrighted works by misrepresenting to the public that the information on its database located at the Infringing Website is its own, when said data actually belongs to Plaintiff.

115. Beginning on an unknown date but at least since November 2018 and continuing to the present, Defendants have sold, used, republished, reverse-engineered, and distributed Assay Information and Cat Photos on its Infringing Website.

116. Defendants have wiped out Plaintiff's watermark and placed its own website address on the Infringed Works to give the consuming public the false and misleading impression that Defendants are the originators and purveyors of this information, data and photography—when they are not.

117. Defendants advertise their service as providing a pricing guide for people who do not have enough Cats to sell to big companies to get access to a pricing guide with Assay Information.

118. Because Defendants offer *Plaintiff's* own trade secrets for sale to Plaintiff's potential customers and competitors, Defendants are in direct competition with Plaintiff.

119. Defendants' tortious acts have caused Plaintiff to lose potential customers to Defendants, as well as to Plaintiff's other competitors who have unfettered access to the Assay Information posted on the Infringing Website, and to lose its competitive advantage by making Plaintiff's trade secrets available to anyone who wants them for $30.

120. Defendants' tortious acts have caused irreparable damage to Plaintiff and Plaintiff's business.

121. These acts constitute a pattern of common law unfair competition by, *inter alia*, false promotion, misappropriation of trade secrets and copyright infringement, entitling Plaintiff to injunction, recovery of compensatory and punitive damages, in addition to all remedies available under the Lanham Act.

### FIFTH CAUSE OF ACTION
### (BREACH OF CONTRACT)

122. Plaintiff reasserts paragraphs 1 to 60.

123. As a user of the Global Mobile App, Defendants expressly and voluntarily agreed to be bound by the terms of the Agreement.

124. At all relevant times, the Agreement was a valid and binding contract.

125. At all relevant times, Plaintiff performed all of its obligations under said Agreement.

126. Defendants' conduct breaches multiple provisions of the Agreement.

127. Defendants violate contractual provisions relating to conducting systematic or automated collection of data, using, republishing, monetizing data or information, reverse engineering, duplicating, copying, and a number of other prohibitions against the theft of Plaintiff's intellectual property.

128. Additionally, by acknowledging to be bound by this Agreement, Defendants have been repeatedly warned not to steal Plaintiff's trade secrets.

129. Defendants have systematically collected Plaintiff's data, monetized Plaintiff's information, republished Plaintiff's Assay Information and Cat Photos for Defendants' own benefit, and potentially reverse-engineered Plaintiff's Assay Information to continue generating unjust profits – all in breach of the Agreement.

130. As a result of Defendants' breach of contract, Plaintiff has suffered damages in an amount to be determined at trial, but in no event less than $10,000,000.

## REQUEST FOR RELIEF

Plaintiff prays for judgment against Defendants, and each of them, jointly and severally, as follows:

1. judgment on each of the claims set forth above;
2. for damages in such amount as may be found, or as otherwise permitted by law;
3. general, special, actual, and statutory damages permitted by law;
4. injunctive relief against Defendants, and that Defendants, their agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with them, be enjoined and restrained from selling, using, copying, posting, distributing, reverse engineering, or making any other infringing use, or infringing distribution of works, trade secrets, or other materials owned by or registered to Plaintiff;

5. injunctive relief barring Defendants, their agents, and employees from continuing to use, sell, operate, reverse-engineer, or employ any intellectual property, confidential information or proprietary information, or trade secret of Plaintiff;

6. for reasonable attorney's fees, costs and disbursements in this civil action;

7. for prejudgment interest according to law;

8. for such other relief as the Court may deem just and proper.

Dated: Brooklyn, New York
January 21, 2021

                    LEWIS & LIN LLC

By:   */s/ Justin Mercer*
     Brett E. Lewis, Esq. (BL-6812)
     Justin Mercer, Esq. (JM-1954)
     81 Prospect Street, Suite 8001
     Brooklyn, NY 11201
     Tel: (718) 243-9323
     Fax: (718) 243-9326
     Brett@ilawco.com
     Justin@ilawco.com

*Attorneys for Plaintiff*
*Global Refining Group, Inc.*

**EXHIBIT LIST**

**EXHIBIT A** – Global Mobile Software Terms and Conditions

**EXHIBIT B** – List of 8,079 Infringed Works

**EXHIBIT C** – Copyright Registration of 452 Cat Photos

**EXHIBIT D** – Copyright Applications for other Cat Photos